**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RENEE LAMANDO,**

                                    **Plaintiff,**

    **vs.**

                                            **3:23-CV-147**
                                            **(MAD/ML)**

**ROCKET MORTGAGE,**

                                    **Defendant.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**STEIN SAKS, PLLC**                      **TAMIR SALAND, ESQ.**
One University Plaza - Suite 620
Hackensack, New Jersey 07601
Attorney for Plaintiff

**BAKER DONELSON BEARMAN**        **MATTHEW SINON**
**CALDWELL & BERKOWITZ**          **MULQUEEN, ESQ.**
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On February 3, 2023, Plaintiff Renee Lamando commenced this action against Equifax Information Services, LLC, Experian Information Solutions, Inc., and Rocket Mortgage alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, _et seq._  _See_ Dkt. No. 1. Plaintiff voluntarily dismissed her claims against Experian Information Solutions, Inc. and stipulated to dismissal of her claims against Equifax Information Services, LLC.  _See_ Dkt. Nos. 27, 28, 31, 32.  As such, Rocket Mortgage is the only remaining Defendant.

1

Presently before the Court is Rocket Mortgage's ("Defendant") motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  *See* Dkt. No. 16. Plaintiff responded and Defendant replied.  *See* Dkt. Nos. 18, 22.  For the following reasons the motion is granted.

## II. BACKGROUND

Plaintiff entered into an "FHA mortgage" agreement on March 10, 2016, with Rocket Mortgage.  *See* Dkt. No. 1 at ¶ 19; Dkt. No. 18-2 at 5.[2]  Rocket Mortgage is a "furnisher of information" to credit reporting agencies.  *See* Dkt. No. 1 at ¶¶ 12, 66-69; *see also* 15 U.S.C. § 1681s-2.  On June 5, 2019, Plaintiff filed for Chapter 7 bankruptcy.  *See* Dkt. No. 1 at ¶ 14; Dkt. No. 18-2 at 7.  Plaintiff's Experian credit report listed her mortgage with Rocket Mortgage as "Discharged through Bankruptcy Chapter 7," with an "Original Balance" of $121,754, a "Monthly Payment" of $0, and the "Highest Balance" of $0.  Dkt. No. 1 at ¶ 19; Dkt. No. 18-2 at 5.  Plaintiff states that "a consumer's mortgage is included by default," in bankruptcy, but because she "continued to pay off her mortgage subsequent to her bankruptcy," her "mortgage was therefore not discharged in Chapter 7 Bankruptcy."  Dkt. No. 1 at ¶¶ 15-17.  "On or about October 15, 2021, Plaintiff paid this account in full."  *Id.* at ¶ 21.  Plaintiff alleges that her mortgage account is "erroneously reporting as if her mortgage was discharged in bankruptcy."  *Id.* at ¶ 18.  Plaintiff

---

[1] In Defendant's notice of motion, it also cites Federal Rules of Civil Procedure 12(b)(2), (4) and (5).  *See* Dkt. No. 16 at 1.  However, Defendant does not present an argument concerning those Rules in its brief in support of its motion to dismiss.  *See generally* Dkt. No. 16-1.  The Court will not consider arguments that have not been briefed.

[2] In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider any document incorporated by reference into the complaint or a document "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  Plaintiff attaches her Experian credit report to her response.  *See* Dkt. No. 18-2.  Plaintiff relied heavily on this credit report in her complaint and it forms the basis for her claims.  *See* Dkt. No. 1 at ¶¶ 18-20.  Thus, the Court will consider the credit report when deciding Defendant's motion to dismiss.

notified Equifax Information Services, LLC and Experian Information Solutions, Inc. of her

dispute, *see id.* at ¶¶ 22-29, and claims that such delivery put Defendant on notice of the issue.

S*ee id.* at ¶¶ 67, 75.  In its answer to Plaintiff's complaint, Defendant "admits that it was made

aware of disputes raised by Plaintiff with regard to credit reporting on the mortgage loan at issue."

Dkt. No. 15 at ¶ 42.  Plaintiff's credit report indicates that she disputed the Chapter 7 bankruptcy

information in November 2022.  *See* Dkt. No. 18-2 at 6-7.  Her dispute was "[r]einvestigat[ed]"

but "[t]his item remained unchanged." *Id.*  The credit report noted that the Chapter 7 bankruptcy

would be "[o]n [r]ecord [u]ntil Jun[e] 2029." *Id.*

Plaintiff alleges that Defendant violated the FCRA by failing to: (1) investigate Plaintiff's

dispute; (2) review all relevant information; and (3) "correctly report results of an accurate

investigation to the credit reporting agencies."  Dkt. No. 1 at ¶ 69.  Plaintiff contends that

Defendant's actions resulted in injuries to Plaintiff in the form of "loss of credit, loss of the ability

to purchase and benefit from credit, a chilling effect on future applications for credit, and the

mental and emotional pain, anguish, humiliation and embarrassment of credit denials." *Id.* at

¶ 82.

Defendant moves to dismiss Plaintiff's complaint on five grounds: (1) the credit reporting

is accurate; (2) Plaintiff failed to satisfy a condition precedent to commencing this action; (3)

Plaintiff's issues are legal rather than factual; (4) Plaintiff lacks Article III standing; and (5)

Defendant did not willfully violate the FCRA.  *See* Dkt. No. 16-1 at 2-7.

### III. DISCUSSION

**A.**     **Legal Standards**

*1. Standard of Review*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).[3]  In considering legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Comm'cns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plan statement of the claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007) (citation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 555 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the entitlement of relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations

---

[3] The Second Circuit "has recognized 'that dismissals for lack of standing may be made pursuant to Fed. R. Civ. P. 12(b)(6).'" *Bernstein v. City of New York*, 621 Fed. Appx. 56, 57 n.1 (2d Cir. 2015) (quoting *Rent Stabilization Ass'n of New York v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993)).

in the complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550

U.S. at 558, or where a plaintiff has "not nudged [its] claim across the line from conceivable to

plausible the[] complaint must be dismissed[,]" *id.* at 570.

### 2. *Fair Credit Reporting Act*

The FCRA regulates credit reporting to ensure "confidentiality, accuracy, relevancy, and

proper utilization of" consumers' information.  15 U.S.C. § 1681(b).  The FCRA "imposes several

duties on those who furnish information to consumer reporting agencies."  *Longman v. Wachovia*

*Bank, Nat'l Ass'n*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681s-2).  "Among these

are duties to refrain from knowingly reporting inaccurate information, . . . and to correct any

information they later discover to be inaccurate."  *Id.* (citing 15 U.S.C. § 1681s-2(a)(1)-(2)).  The

FCRA provides consumers the right to dispute any information reported to a credit reporting

agency.  *See id.* (citing 15 U.S.C. §§ 1681g(c)(1)(B)(iii), 1681i(a)(1)(A), 1681s-2(a)(8)).

> If a dispute is filed with the agency, both the agency and the
> furnisher of that information have a duty to reasonably investigate
> and verify that the information is accurate.  *See* §§ 1681i(a)(1)(A),
> 1681s-2(b).  If a dispute is filed directly with the furnisher, the
> furnisher only has a duty to investigate in certain circumstances
> established by regulation.  *See* § 1681s-2(a)(8); 16 C.F.R. § 660.4;
> *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 35 & n.8 (1st Cir.
> 2010).

*Id.*

"[A]fter a furnisher receives notice from a [credit reporting agency] that a consumer

disputes the 'completeness or accuracy' of furnished information, the furnisher must (1)

investigate the disputed information, (2) review all relevant information provided by the CRA,

and (3) report the results of the investigation to the CRA."  *Mohnkern v. Equifax Info. Servs.,*

*LLC*, No. 19-CV-6446, 2021 WL 5239902, *3 (W.D.N.Y. Nov. 10, 2021) (quoting 15 U.S.C. §§

1681s-2(b)(1)(A)-(C))).  Section 1681s-2 requires that a furnisher of information "shall not

furnish any information relating to a consumer to any consumer reporting agency if the

[furnisher] knows or has reasonable cause to believe that the information is inaccurate."  15

U.S.C. § 1681s-2(a)(1)(A).  "Reasonable cause to believe that the information is inaccurate" is

defined as "having specific knowledge, other than solely allegations by the consumer, that would

cause a reasonable person to have substantial doubts about the accuracy of the information."  *Id.*

§ 1681s-2(a)(1)(D).  The Code of Federal Regulations defines "accuracy" as

> that information that a furnisher provides to a consumer reporting
> agency about an account or other relationship with the consumer
> correctly: (1) Reflects the terms of and liability for the account or
> other relationship; (2) Reflects the consumer's performance and
> other conduct with respect to the account or other relationship; and
> (3) Identifies the appropriate consumer.

12 C.F.R. § 1022.41(a).

**B.**      **Defendant's Motion to Dismiss**

  ***1. Article III Standing***

Defendant argues that Plaintiff has not "allege[d] any facts demonstrating that the harm

she complains of was not simply caused by her admitted bankruptcy and its effects on her credit

score."  Dkt. No. 16-1 at 4.  Therefore, Defendant moves to dismiss Plaintiff's complaint for

failure to establish "any injury from the alleged violation of the FCRA" sufficient to demonstrate

Article III standing.  *Id.* at 6.  Plaintiff argues "that the inaccurate information contained in the

credit reports was disseminated" to potential creditors, establishing an injury in fact, which is

traceable to Defendant's conduct.  Dkt. No. 18 at 12.

"To establish Article III standing under the U.S. Constitution, a plaintiff must show (1) an

injury in fact (2) caused by the defendant, (3) that would likely be redressable by the court."

*Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 279-80 (2d Cir. 2023) (citing *Thole v. U.S. Bank Nat'l Ass'n*, 590 U.S. —, 140 S. Ct. 1615, 1618 (2020)).  "[A] federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *American Legion v. American Humanist Ass'n*, 588 U.S. —, 139 S. Ct. 2067, 2103 (2019)).  "It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action." *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018).  In the context of an FCRA claim, the Supreme Court has explained that "a bare procedural violation, divorced from any concrete harm" is not enough to satisfy the injury-in-fact requirement of Article III.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  The Supreme Court explained in *TransUnion* that "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo, Inc.*, 578 U.S. at 341).

"The standing inquiry [can be] distinguishe[d] between (i) credit files that consumer reporting agencies maintain internally and (ii) the consumer credit reports that consumer reporting agencies disseminate to third-party creditors." *TransUnion*, 594 U.S. at 434 (concluding that the plaintiffs who alleged that their "reports were disseminated to third-party businesses" had standing, but the plaintiffs whose information was "not provide[d] . . . to any potential creditors" lacked standing).  "Where a plaintiff claims that an improper notation on his credit report resulted in a credit score reduction that could cause him reputational and financial harm, the absence of allegations of dissemination to third parties requires dismissal." *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 392 (E.D.N.Y. 2022) (collecting cases); *see also Swainson v. Lendingclub Corp.*, No. 21-CV-5379, 2022 WL 2704629, *7-8 (S.D.N.Y. June 24, 2022)

(concluding that an allegedly decreased credit score, without evidence of dissemination of that score, did not confer standing).

In Plaintiff's complaint, she alleges "soft and hard pulls on [her] credit reports," by potential credit lenders.  Dkt. No. 1 at ¶ 41.[4]  She contends that, due to the inaccuracies in her credit report caused by Defendant's actions and inactions, she was denied five new lines of credit. *See* Dkt. No. 1 at ¶¶ 34-41.  Plaintiff's Experian credit report reflects these "pulls."  Dkt. No. 18-2 at 7-30.

Defendant argues that Plaintiff does not address how the bankruptcy itself could have been the cause of her credit denials.  *See* Dkt. No. 16-1 at 5-6.  Defendant correctly notes that conclusory allegations that "are purely speculative" are not enough, on their own, to create standing.  *See* Dkt. No. 22 at 5-6; *see also Wan v. TransUnion LLC*, No. 22-CV-115, 2022 WL 955290, *1-2 (E.D.N.Y. Mar. 30, 2022) (finding no standing because (1) "[the p]laintiff's allegations that she suffered 'limited credit opportunities' and harm to her 'otherwise positive credit' do not constitute concrete injury" absent "an allegation that these circumstances resulted in a materialized injury[] or a sufficiently imminent and substantial risk of injury" and (2) "[the p]laintiff's allegations that inaccurate information about her was distributed . . . to one or more third parties similarly does not constitute concrete injury because the complaint does not clearly allege any facts demonstrating disclosure to third parties") (citation omitted).

---

[4] "'Hard credit pulls refer to credit inquires related to transactions that are initiated by a consumer, whereas soft pulls refer to inquires made by businesses with which the consumer already has a business relationship and inquires made by credit card or insurance companies,' such as pre-screening before making special offers to existing customers."  *Krausz v. Loandepot.com, LLC*, No. 22-CV-152, 2022 WL 16960928, *3 n.2 (S.D.N.Y. Nov. 16, 2022) (quoting *Alder v. DirecTV, LLC*, No. 18-CV-1665, 2018 WL 6981838, *1 (C.D. Cal. Oct. 24, 2018)).

At this stage, accepting Plaintiff's allegations as true, and as corroborated by her credit report, she has sufficiently alleged an injury—denial of credit—that is traceable to Defendant's conduct—not reporting that she paid off her mortgage. *See Spokeo, Inc.*, 578 U.S. at 335 ("[T]he FCRA applies to companies that regularly disseminate information bearing on an individual's 'credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living'") (quoting 15 U.S.C. § 1681a(d)(1)); *see also TransUnion*, 594 U.S. at 432-33 (holding that when the plaintiffs' credit "reports were disseminated to third parties" those plaintiffs "suffered a concrete injury in fact under Article III," similar to "the harm associated with the tort of defamation").

Although it may be true that "[b]ankruptcy is known to have a significant negative effect on an individual's credit score," Dkt. No. 16-1 at 6, Plaintiff sufficiently alleges that Rocket Mortgage should have reported subsequent payments on her mortgage and that the failure to do so resulted in the denials of credit because creditors did not have all of the information. As such, the Court denies Defendant's motion on this ground.

### 2. Accuracy of Credit Report

Defendant argues that Plaintiff's complaint should be dismissed because her credit report was accurate. *See* Dkt. No. 16-1 at 2-3. Plaintiff states that she "subsequently paid off the debt in its entirety after the discharge, which is not reflected on [her] credit report." Dkt. No. 18 at 18; *see* Dkt. No. 1 at ¶¶ 32, 33, 44. She contends that "all relevant facts are conceded by the parties. Plaintiff owed the debt, her personal liability was discharged in bankruptcy, but the debt remained and she paid it in full after the discharge." Dkt. No. 18 at 26.

"To state a claim under section 1681s-2(b) of the FCRA . . . a plaintiff must allege that '(1) a credit furnisher received notice of a credit dispute from a [CRA][,] [] (2) the furnisher

negligently or willfully failed to conduct a reasonable investigation'" and (3) "that the information reported by a furnisher to a CRA was inaccurate." *Mohnkern*, 2021 WL 5239902, at *3 (quotations omitted); *see also Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) (citing *Shimon v. Equifax Info. Sols., Inc.*, 994 F.3d 88, 91 (2d Cir. 2021) (""[T]o prevail on a section 1681e claim against a consumer reporting agency, it is necessary for a plaintiff to establish, among other things, that a credit report contains an inaccuracy"). "[A] credit report is inaccurate 'either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" *Mader*, 56 F.4th at 269 (quoting *Shimon*, 994 F.3d at 91); *see Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367, 2019 WL 2492762, *3 (E.D.N.Y. June 14, 2019) (collecting cases); *see also Shimon*, 994 F.3d at 91-92. "[T]he threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry . . . is necessary." *Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199, 209 (D. Conn. 2013) (collecting cases); *see also Khan*, 2019 WL 2492762, at *3; *Mohnkern*, 2021 WL 5239902, at *3.

 As recently explained by the District of Connecticut,

> it is appropriate to resolve the instant dispute at this procedural juncture. Although "[t]he question of whether information that is 'technically correct' is materially misleading is generally a matter for the jury" to decide, where "the parties provide the reported information in dispute and the court determines only one reasonable interpretation of the report exists, a court may determine the accuracy of the report as a matter of law."

*Boyer v. TransUnion, LLC*, No. 21-CV-00918, 2023 WL 1434005, *4 (D. Conn. Feb. 1, 2023) (quoting *Gibbs v. TransUnion LLC*, No. 21-CV-00667, 2021 WL 4439546, *2 (E.D. Pa. Sept. 28, 2021), *aff'd*, No. 22-1075, 2023 WL 193157 (3d Cir. Jan. 4, 2023)).

Plaintiff admits that "a consumer's mortgage is included by default" in bankruptcy filings. *See* Dkt. No. 1 at ¶ 15.  However, Plaintiff contends that her full payment of the mortgage, after filing for Chapter 7 bankruptcy, negates the "discharge in bankruptcy" that is reported on her credit report.  *See id.* at ¶¶ 13-18; *see also* Dkt. No. 18 at 26.

In detailing the differences between debt and liability in a mortgage, the Supreme Court explained that

> [a] mortgage is an interest in real property that secures a creditor's right to repayment.  But unless the debtor and creditor have provided otherwise, the creditor ordinarily is not limited to foreclosure on the mortgage property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally.  *See* 3 R. Powell, The Law of Real Property ¶ 467 (1990).  A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation.  *See* 11 U.S.C. § 727.  However, such a discharge extinguishes only "the personal liability of the debtor."  11 U.S.C. § 524(a)(1).  Codifying the rule of *Long v. Bullard*, 117 U.S. 617 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through bankruptcy.

*Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991).  The legislative history of section 524 of the Bankruptcy Code explains that bankruptcy "is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it.  In effect the discharge extinguishes the debt, and creditors may not attempt to avoid that."  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 365-66, 1977 WL 9628, *366 (1977).

In *Horsch v. Wells Fargo Home Mortgage*, 94 F. Supp. 3d 665 (E.D. Pa. 2015), the Eastern District of Pennsylvania was faced with an issue similar to that which is presented in this case whereby the "debtor plaintiffs claim[ed] that their credit reports were inaccurate or incomplete because they did not reflect any payments made to their mortgage servicers after the

Notes were discharged in bankruptcy." *Id.* at 674.  Relying on a Tenth Circuit case, the court agreed that the plaintiffs "making payments on the mortgage to prevent foreclosure did not mean that [they] truly owed anything on the discharged account." *Id.* (citing *Schueller v. Wells Fargo & Co.*, 559 Fed. Appx. 733, 737 (10th Cir.) *cert. denied*, 574 U.S. 908 (2014)).  The court noted that because "a person's credit report by definition provides information about the debts owed by that person[,] . . . it is accurate to report zero balances on these accounts after the Notes are discharged in bankruptcy." *Id.* at 675 (footnote and quotation omitted)

The Eastern District of Michigan agreed, stating in *Groff v. Wells Fargo Home Mortgage, Inc.*, 108 F. Supp. 3d 537 (E.D. Mich. 2015), that "[a] discharge in bankruptcy extinguishes the debtor's personal liability for the debt, but leaves 'intact' the remedy against the property, . . . characterized as 'an action against the debtor *in rem*.'" *Id.* at 540 (quoting *Schueller*, 559 Fed. Appx. at 737); *see also Jarvis v. Fed. Nat'l Mortg. Assoc.*, No. 16-CV-05194, 2016 WL 7243754, *2 (W.D. Wash. Dec. 15, 2016) ("Bankruptcy discharges personal financial liability on instruments named in petition [including] on a promissory note and on the underlying deed of trust, though, the deed of trust holder maintains an *in rem* interest on the property").  The *Groff* court concluded that, "[t]here was nothing false or 'inaccurate' about the bank's reporting of the mortgage loan account as closed, with a zero balance," because "[t]he plaintiff d[id] not dispute that his personal obligation to pay the note was discharged by his bankruptcy, and he d[id] not contend that [the defendant] ever made any effort to compel him to make further payments, or that he would have had any obligation to do so if it had." *Id.* at 541; *see also Schueller*, 559 Fed. Appx. at 737 (noting that the plaintiff "cited no authority requiring Wells Fargo to report his post-bankruptcy mortgage payments").

> Moreover . . . any report of payments voluntarily made by the [plaintiff] as relating to the discharged mortgage loan would suggest to anyone viewing the plaintiff's credit report that the bank was engaged in exactly the conduct prohibited by the bankruptcy discharge—collecting or attempting to collect money from [the plaintiff] to satisfy a previously discharged debt.  That reporting would itself have been inaccurate and false, because it would not accurately and completely reflect the truth that the plaintiff's debt had been extinguished.

*Id.* at 542; *see also Lawrence v. Paramount Residential Mortg. Grp., Inc.*, No. 19-CV-02103, 2020 WL 6689371, *3 (D. Or. July 20, 2020) (granting the defendant's motion to dismiss because the plaintiff's "complaint fails to allege facts intimating that [the] plaintiff's debt with [the defendant] was not discharged through bankruptcy or that her payments were not voluntary;" therefore, the "complaint fails to plausibly allege that [the defendant]'s reporting was incomplete or inaccurate"); *Blanch v. TransUnion, LLC*, 333 F. Supp. 3d 789, 793 (M.D. Tenn. 2018) (granting the defendant's motion to dismiss because "[t]here was noting false or 'inaccurate' about [the defendant] reporting [the plaintiff]'s accounts as included in her bankruptcy, closed, and with a zero balance").  This logic applies with equal force here as Defendant reported that Plaintiff's debt was discharged in bankruptcy, and that she did not owe a remaining balance.  *See* Dkt. No. 18-2 at 5-6.  Plaintiff has not demonstrated that this information is inaccurate.

Plaintiff attempts to differentiate this line of cases from her own by relying on *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75 (2d Cir. 2018) and stating that "the Second Circuit looks beyond the strict application of the law in a sterilized academic sense and penetrates to the practical effect of [judicial foreclosure] proceedings."  Dkt. No. 18 at 20 (citing *Cohen*, 897 F.3d at 75).  In *Cohen*, the Second Circuit discussed judicial foreclosure actions, requirements thereof, and alleged violations of the Fair Debt Collection Practices Act.  *See Cohen*, 897 F.3d at 78-88.  The *Cohen* case makes no mention of bankruptcy filings or credit reporting.  *See id.*

Plaintiff relies on the *Cohen* court's explanation "that in rem proceedings were really just designed to collect on the underlying note." Dkt. No. 18 at 20 (citation omitted). Based on that conclusion, Plaintiff states that the Second Circuit would likely disagree with the aforementioned line of cases. *See id.* at 21.

To date, the Second Circuit has not disagreed, and based on the available authority across the country on this issue, there appears to be a consensus that a credit report which indicates a discharge in bankruptcy, without mention of subsequent payments, is accurate as there is no legal requirement for a report to reflect such payments. *See Horsch*, 94 F. Supp. 3d at 675; *Groff*, 108 F. Supp. 3d at 541; *Schueller*, 559 Fed. Appx. at 737; *Jarvis*, 2016 WL 7243754, at *2; *Lawrence*, 2020 WL 6689371, at *3; *Reichardt*, 2019 WL 1359119, at *4; *Blanch*, 335 F. Supp. 3d at 793.

Plaintiff also relies on *Irby v. Fashion Bug (In re Irby)*, 337 B.R. 293 (N.D. Ohio 2005). *See* Dkt. No. 18 at 22. Therein, the United States Bankruptcy Court of the Northern District of Ohio stated that "upon discharge, it is only a debtor's personal obligation to pay the debt that is effectively extinguished; the debt itself remains." *In re Irby*, 337 B.R. at 295 (citing *Johnson*, 501 U.S. at 83). The *Irby* Court focused on violations of Bankruptcy Code § 524, which mandates that creditors cannot take any action to recover a debt which has been discharged; yet "the reporting of the debt will not likely run afoul with the discharge injunction unless it is coupled with other actions undertaken by the creditor to collect or recover on the debt." *Id.* at 296. Further, "[w]hile the [c]ourt can understand [a] desire to have this debt removed from [a] credit report, bankruptcy was never meant to come without a price. And one price that has always existed is that a debtor's ability to obtain credit may suffer." *Id.* at 297 (citing 15 U.S.C. § 1681c(a) (allowing credit reporting agencies to publish a debtor's bankruptcy filing for up to ten years)); *see also* Dkt. No. 18-2 at 7 (Plaintiff's Chapter 7 Bankruptcy "Date Resolved 09/09/2019"

and "On Record Until Jun[e] 2029").  The *Irby* court did note, however, "[t]his does not mean that the reporting of a discharged debt is immune from the reach of the discharge injunction.  Section [] 524(a)(2) enjoins any 'action' or 'act' to recover a debt."  *Id.* at 296.  "Thus, for example, if the act of reporting a debt was undertaken for the specific purpose of coercing the debtor into paying the debt, a violation of the discharge injunction could be established."  *Id.* (citations omitted).

After quoting *Irby*, Plaintiff states, "[a]ll that is being reported is the truth that the debt was subsequently paid off, not, as it was in *Horsch*, subsequent payments that could be viewed as attempts to further collect the debt, in violation of the discharge injunction."  Dkt. No. 18 at 22.  Plaintiff's point is not entirely clear as *Irby* concluded that the plaintiff's claim had to be dismissed because the plaintiff did not allege "that the Defendants undertook any 'action' or 'act' to collect on their claim."  *Irby*, 337 B.R. at 297.  Here, too, Defendant reported Plaintiff's mortgage as discharged with a zero-dollar obligation and Plaintiff does not allege that it took any act to recover the discharged debt.  *See* Dkt. No. 18-2 at 5-6.

In essence, Plaintiff argues that the failure of her credit report to include more information makes the presented information inaccurate.  Absent statutory or caselaw authority supporting such a contention, the fact that Plaintiff continued paying the *in rem* liability to stave off foreclosure does not create an inaccuracy in Plaintiff's credit report.  *See Groff*, 108 F. Supp. 3d at 540.  Perhaps a report reflecting continued payment, without creditors requiring the payment, might be more inclusive and all-encompassing of the reality of Plaintiff's situation, but it is not required by law.  Rather, "as a matter of law, the Court's task is to consider whether the information is inaccurate or misleading, not to look for ways that the information might be *more accurate*."  *Holland v. TransUnion LLC*, 574 F. Supp. 3d 292, 300 (E.D. Pa. 2021).  In *Holland*, the Eastern District of Pennsylvania explained that

as a matter of policy, if the Court were to grant [plaintiff]'s request, there would be no limiting principle.  If information in a credit report that could be *more accurate* is *inaccurate* for purposes of the FCRA, then every single customer in the United States would be able to state a claim under the FCRA.  . . .  If a plaintiff could make a claim under the FCRA that credit information was inaccurate simply by alleging, entirely subjectively, that there is a 'better' (perhaps only longer, more cumbersome) way to report it, federal courts would take up the unwelcome task of engaging in pedantic pedagogy of phraseology.

*Id.* at 301.[5]

Based on the foregoing, Plaintiff's complaint fails to state a claim on which relief can be granted because the credit report is accurate.  *See* FED. R. CIV. P. 12(b)(6); *see also Horsch*, 94 F. Supp. 3d at 677; *Neclerio*, 983 F. Supp. 2d at 209; *Shimon*, 994 F.3d at 91-92.  As such, Defendant's motion to dismiss is granted on this ground.

### 3.  *Legal Versus Factual Issues*

Defendant also argues that Plaintiff's claim concerning "whether a loan included in bankruptcy was discharged is ultimately a legal rather than a factual question."  Dkt. No. 16-1 at

---

[5] The Court notes that the definitions of a credit report provided by various federal agencies do not provide clarity on whether a report must include subsequent payments following a discharge in bankruptcy.  However, a plain reading of the definitions might make one think that such subsequent payments should be reported.  *See, e.g.*, *What is a Credit Report?*, CONSUMER FIN. PROT. BUREAU, https://www.consumerfinance.gov/ask-cfpb/what-is-a-credit-report-en-309/ (Sep. 1, 2020) ("[A] statement that has information about your credit activity and current credit situation such as loan paying history and the status of your credit accounts"); *Credit Reports and Credit Scores*, BD. GOVERNORS FED. RSRV. SYS., https://www.federalreserve.gov/creditreports/pdf/credit_reports_scores_2.pdf (last visited Jan. 9, 2024) ("[A] record of your credit history and includes information about: Your identity . . . Your existing credit . . . such as your credit card accounts, mortgages, car loans, and student loans"); *Consumer Assistance Topics; Credit Reports*, FDIC, https://www.fdic.gov/resources/consumers/consumer-assistance-topics/credit-reports.html (Aug. 1, 2023) ("[I]ncludes details about your credit history, including the number of credits accounts you have open"); *Understanding Your Credit*, FED. TRADE COMM'N, https://consumer.ftc.gov/articles/understanding-your-credit (Dec. 2021) ("[A] summary of your credit history," such as "your credit cards, your loans, how much money you owe, if you pay your bills on time or late, if you filed for bankruptcy").

4.  Defendant states that, because "[t]his is ultimately a legal question," "Plaintiff may be able to return to the Bankruptcy Court to resolve this question, but it cannot provide the basis for a[n] FCRA lawsuit now." *Id.* Plaintiff argues that her claim "does not involve an interpretation of the Bankruptcy Code, but [is] a factual dispute concerning the failure to report the final payment." Dkt. No. 18 at 22.

The Second Circuit, in *Mader v. Experian Information Solutions, Inc.*, 56 F.4th 264 (2d Cir. 2023), addressed a similar issue, but concerning a credit reporting agency and student loans. There, the plaintiff filed for Chapter 7 Bankruptcy, and sued the credit reporting agency that continued to report an outstanding student debt. *See id.* at 266.  In analyzing the FCRA claim, the Second Circuit relied on other circuit court opinions to support the contention that "inaccuracies that turn on legal disputes are not cognizable under the FCRA." *Id.* at 270 (citing *DeAndrade v. TransUnion LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891-92 (9th Cir. 2010); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015); *Denan v. TransUnion LLC*, 959 F.3d 290, 293-96 (7th Cir. 2020)).  The Second Circuit stated that "[t]he bespoke attention and legal reasoning required to determine the post-bankruptcy validity of [the plaintiff]'s debt means that its status is not sufficiently objectively verifiable to render [the plaintiff]'s credit report 'inaccurate' under the FCRA." *Id.*

The Second Circuit revisited the issue in *Sessa v. TransUnion, LLC*, 74 F.4th 38 (2d Cir. 2023).[6]  In *Sessa*, the plaintiff brought an action against the defendant credit reporting agency "alleg[ing] that [the defendant] violated section 1681e(b) by including [a] balloon payment as a debt on [the plaintiff's] credit report and inaccurately reporting [] lease information" of the plaintiff's vehicle. *Id.* at 41 (citation omitted).  The defendant moved for summary judgment,

---

[6] *Sessa* was decided after the parties submitted their briefs to the Court.

arguing that the "'any purported inaccuracy' in its report was 'solely born of legal interpretation,' rendering it non-cognizable under the FCRA." *Id.* (citation omitted).  In vacating the district court's grant of summary judgment, the Second Circuit wrote:

> [t]he District Court, without the benefit of <u>Mader</u> held that the FCRA incorporates a threshold inquiry as to whether a claimed error is factual or legal in nature.  That was error.  The question of whether a debt is objectively and readily verifiable will <u>sometimes</u>, as it did in <u>Mader</u>, involve an inquiry into whether the debt is the subject of legal dispute.  There, the issue of whether Mader's debt had been discharged presented an "unresolved legal question" under bankruptcy law, which "render[ed] his claim non-cognizable under the FCRA."  But that does not mean that *any* dispute that might arguably turn on a question of law is non-cognizable under the FCRA.  As the <u>Mader</u> Court explained, [credit reporting agencies] may be "required by the FCRA to accurately report information derived from readily verifiable and straightforward application of law to facts."

*Id.* at 43 (internal citations omitted) (quoting *Mader*, 56 F.4th at 270).

Therefore, "in determining whether a claimed inaccuracy is potentially actionable under section 1681e(b), a court must determine, <u>inter alia</u>, whether the information in dispute is 'objectively and readily verifiable.'"  *Id.* (quoting *Mader*, 56 F.4th at 269).  "For instance, other courts have held that misreporting the clear effect of a bankruptcy discharge order on certain types of debt is a cognizable inaccuracy under the FCRA."  *Mader*, 56 F.4th at 270 (collecting cases); *see also Sessa*, 74 F.4th at 43; *Losch v. Nationstar Mortg., LLC*, 995 F.3d 937, 946 (11th Cir. 2021); *Benjamin v. Experian Info. Sols., Inc.*, 561 F. Supp. 3d 1330, 1360 (N.D. Ga. 2021).  This is actionable because the inaccuracy in the reporting is objectively and readily verifiable from the application of the law concerning debts and bankruptcy discharge and to the facts of a plaintiff's case.  In other words, the law is settled that a plaintiff does not have a continued debt owed on property that has been discharged through bankruptcy.  *See Torres v. Chase Bank USA,*

*National Ass'n*, 367 B.R. 478, 488 (Bankr. S.D.N.Y. 2007) ("[A] credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor").

Although Section 1681s-2 requires that a furnisher of information "shall not furnish any information relating to a consumer to any consumer reporting agency if the [furnisher] knows or has reasonable cause to believe that the information is inaccurate," 15 U.S.C. § 1681s-2(a)(1)(A), there is nothing in the relevant statutes or applicable caselaw that requires a furnisher of information to report subsequent payments following a discharge in bankruptcy. *See id.* § 1681s-2(a)(1)(D) ("Reasonable cause to believe that the information is inaccurate" is defined as "having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information").

A straightforward application of 15 U.S.C. §§ 1681s-2(a)(1)(A)-(D) to the facts of Plaintiff's case does not require a furnisher to report subsequent mortgage payments after discharge, nor does any available caselaw. *See Sessa*, 74 F.4th 38. Rather, Rocket Mortgage accurately reported that Plaintiff's mortgage had been discharged in bankruptcy—a fact Plaintiff does not dispute. *See* Dkt. No. 18-2 at 5. Thus, Plaintiff's challenge to the alleged inaccuracy presents a legal issue—whether furnishers of information are required to report subsequent payments on a mortgage after a discharge in bankruptcy—that is not cognizable under the FCRA. *See Mader*, 56 F.4th at 266.

Plaintiff paints this issue in a different light, arguing that this is a factual issue because Defendant had documentation "evidencing [Plaintiff's] payment of the debt in full," and therefore "[i]t would have been relatively easy for Defendant to review the account documents supplied by

19

Plaintiff see that the loan had been paid off, and report that fact to the credit bureaus." Dkt. No. 18 at 23. However, while an FCRA claim can be actionable when a defendant does not apply readily verifiable and straightforward law to facts, when the matter is one of unsettled law, without instruction from statutes or caselaw, the matter is not cognizable under the FCRA. *See Mader*, 56 F.4th at 270; *Sessa*, 74 F.4th at 43; *see also Hossain v. Portfolio Recovery Assocs., LLC*, No. 22-CV-5124, 2023 WL 6155974, *3 (E.D.N.Y. Sept. 21, 2023) ("It follows under *Mader* and *Sessa*, that CRAs are not required to adjudicate intricate issues, legal or otherwise, to ensure the accuracy of a consumer's credit report. Instead CRAs must focus on straightforward, objectively and readily verifiable information when conducting its investigations under the FCRA to ensure accurate credit reports"); *Cunningham v. TransUnion, LLC*, No. 22-CV-3331, 2023 WL 6823182, *3 (S.D. Ohio Oct. 11, 2023) ("[The p]laintiffs' alleged inaccuracy [of reported delinquent payments for an unsigned lease] is not 'objectively and readily verifiable.' Instead, [the p]laintiffs raise precisely the kind of legal dispute CRAs are ill-equipped to handle"); *Reyes v. Equifax Info. Servs., LLC*, No. 21-CV-00639, 2023 WL 7272368, *6 (E.D. Tex. Sept. 14, 2023) ("[B]ecause there is a live legal dispute between [the plaintiff] and [the defendant] over whether [the plaintiff] is responsible for the outstanding balance, that balance is not 'objectively and readily verifiable.' Accordingly, even if the [the defendant's] information was inaccurate, [the plaintiff's] dispute is not actionable under the FCRA"); *see also* 15 U.S.C. § 1681s-2(a)(1).

Plaintiff points out that these cases "focus . . . on credit reporting agencies since they are particularly ill-suited to answer legal question surrounding the debt," and that furnishers stand in a different role and are "fully capable of resolving [such] issue[s] . . . with ownership of, and access to, account-level documentation." Dkt. No. 18 at 23. "The Second Circuit has not addressed whether an alleged legal dispute regarding the validity or enforceability of an underlying debt

renders the debt 'inaccurate' for purposes of a section 1681s-2(b) claim against a furnisher."
*Mohnkern*, 2021 WL 5239902, at *6.  The First Circuit's ruling in *Chiang v. Verizon New
England, Inc.*, 595 F.3d 26 (1st Cir. 2010) is instructive.  *See Mohnkern*, 2021 WL 5239902, at
*5-6 (citing *Chiang*, 595 F.3d at 38); *Holland v. Chase Bank USA, Nat'l Ass'n*, 475 F. Supp. 3d
272, 276-77 (S.D.N.Y. 2020) (same); *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 Fed. Appx.
452, 458 (11th Cir. 2019) (same).

      In *Chiang*, the plaintiff claimed that under 15 U.S.C. § 1681s-2(b) the defendant-furnisher
failed to adequately investigate the plaintiff's dispute.  *See Chiang*, 595 F.3d at 29-30.  In its
analysis, the First Circuit "emphasize[d] that, just as in suits against CRAs, a plaintiff's required
showing [for a claim against a furnisher under section 1681s-2(b)] is *factual* inaccuracy, rather
than the existence of disputed legal questions" because "[l]ike CRAs, furnishers are 'neither
qualified nor obligated to resolve' matters that 'turn[] on questions that can only be resolved by a
court of law.'"  *Id.* at 38 (quoting *DeAndrade*, 523 F.3d at 68); *see also Mohnkern*, 2021 WL
5239901, at *5.  The Eleventh Circuit reiterated this standard in *Hunt v. JPMorgan Chase Bank,
National Ass'n*, stating that "[w]hether [the plaintiff] was obligated to make payments on the
mortgage after the [state court action] was filed is a currently unresolved legal, not factual,
question," and that "even assuming [defendant] furnished information that turned out to be legally
incorrect under some future ruling, [defendant's] purported legal error was an insufficient basis
for a claim under the FCRA."  *Hunt*, 770 Fed. Appx. at 458; *see also Garey v. BWW Law Grp.,
LLC*, No. 19-CV-03112, 2021 WL 4521329, *17 (D. Md. Oct. 4, 2021) ("The fact that [the
plaintiff] continues to dispute the legality of the [reported] foreclosure is of no object—[furnisher-
defendant] is neither qualified nor obligated to resolve a question that can only be resolved by a

court of law") (citation omitted); *Garland v. Marine Credit Union*, No. 18-CV-270, 2018 WL 5313769, *2, *4 (E.D. Wis. Oct. 26, 2018) (holding same applied to a furnisher).

Plaintiff cites to *Mileva v. TransUnion, LLC*, No. 20-CV-123, 2021 WL 1172704 (N.D. Ill., Mar. 29, 2021), wherein the plaintiff and the defendant-furnisher entered into a written agreement to modify the plaintiff's mortgage plan that required her to make three "trial period" payments after the plaintiff's loan was four months delinquent. *See id.* at *1-2; Dkt. No. 18 at 26-27. The plaintiff "was making her trial period payments, [but] her account remained delinquent and [the d]efendant . . . reported this delinquency to credit reporting agencies." *Id.* at *2. "The parties dispute[d] whether [the d]efendant . . . reported any notation of the trial period payments." *Id.* The *Mileva* court denied the furnisher's motion for summary judgment because "the potentially misleading information in the [defendant's] credit report—the failure to report the trial period payments—does not rest on a legal dispute between [the p]laintiff and [the furnisher]." *Id.* at *8. The court came to this conclusion without citation to any caselaw or further explanation. *See id.*

Here, Defendant did not report a delinquency after Plaintiff entered bankruptcy, nor did Defendant agree to report subsequent mortgage payments. Plaintiff asks this Court to conclude that under 15 U.S.C. § 1681s-2(b), Defendant, as a furnisher of information, is required to report subsequent mortgage payments after entering Chapter 7 bankruptcy. This is an unsettled legal question that the Court declines to answer at this juncture. As such, dismissal on this ground is also warranted.

### 4. Willful Violation of the FCRA

As to Plaintiff's willful violation claim, she alleges that Defendant's "conduct, action and inaction" was willful, making Defendant "liable for actual, statutory and punitive damages in an

amount to be determined by a jury pursuant to 15 U.S.C. § 1681n." Dkt. No. 1 at ¶ 71.

Defendant argues that it should be dismissed because Plaintiff's "pleading is insufficient to satisfy

the pleading requirements." Dkt. No. 16-1 at 6.

 Willful violations require that the defendant either acted with actual knowledge, or in

"reckless disregard," of a legal duty. *See Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57-58 (2007); *see*

*also* 15 U.S.C. § 1681n(a). Because there is no legal duty for a furnisher of information to report

mortgage payments subsequent to a discharge in bankruptcy, Defendant cannot be said to have

willfully violated the FCRA. The Supreme Court has explained that

> a company subject to [the] FCRA does not act in reckless disregard
> of [the FCRA] unless the action is not only a violation under a
> reasonable reading of the statute's terms, but shows that the
> company ran a risk of violating the law substantially greater than
> the risk associated with a reading that was merely careless.

*Safeco Ins. Co.*, 551 U.S. at 69. Thus, Plaintiff must allege that Defendant's conduct was

"objectively unreasonable" and would have raised an "unjustifiably high risk" of violating the

FCRA. *Id.* at 70. Plaintiff states that "Defendant failed to fix a fairly obvious error in Plaintiff's

credit report" and that "Defendant's failure to report the final payment is inaccurate on its face,

which any furnisher would have realized given its basic obligations under the FCRA." Dkt. No.

18 at 27-28. Plaintiff does not cite any authority to support the contention that this was an

"obvious error" or that "any furnisher would have realized" this obligation.

 Plaintiff cites *Freidman v. CitiMortgage, Inc.*, wherein the court concluded that the

plaintiff sufficiently alleged that the defendant's actions "created an unjustifiably high risk of

harm that was either known or so obvious it should have been known." *Friedman v.*

*CitiMortgage Inc.*, No. 18-CV-11173, 2019 WL 4194350, *4 (S.D.N.Y. Sept. 3, 2019); *see* Dkt.

No. 18 at 27. There, the information being disputed was a loan which had been transferred to

another lender but was still being reported as though the plaintiff had an obligation to pay the original lender and that she was late on payments where there was a $0 balance.  *See Friedman*, 2019 WL 4194350, at *1.  The court concluded that the plaintiff sufficiently alleged a violation of § 1681n because she alleged that reporting late payments on a $0 balance "was 'nonsensical and wrong.'"  *Id.* at *4 (quotation omitted).

Here, the alleged error was not "obvious," as Defendant accurately reported that Plaintiff's mortgage had been discharged in bankruptcy.  Plaintiff's other cases do not aid in giving support to her purported conclusion.  *See* Dkt. No. 18 at 27-28 (citing *Huggins v. FedLoan Servicing*, No. 19-CV-21731, 2020 WL 13645747, *6 (D.N.J. Dec. 2, 2020) (allowing claims to proceed where the plaintiff disputed the reporting of his loans as past-due after the loans were transferred to another lender); *Ellis v. Equifax Info. Servs., LLC*, No. 18-CV-5185, 2019 WL 3503538, *4 (N.D. Ga. June 6, 2019) (allowing claims to go forward where the plaintiff alleged that her credit reports indicated a "present, ongoing, scheduled monthly payment obligation for both of the two disputed accounts, even though those accounts were closed and had a zero balance")).  This is because those cases "involve credit reports that indicated that the plaintiffs still had a monthly payment on the account."  *Krausz v. Equifax Information Services, LLC*, No. 21-CV-7427, 2023 WL 1993886, *13 (S.D.N.Y. Feb. 14, 2023).

Here, Plaintiff's credit report does not indicate that any amount was still owed, as it reflects no balance and no past due payments after she filed for bankruptcy in June 2019.  *See* Dkt. No. 18-2 at 5-6; Dkt. No. 18 at 7; *see also See Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 580 (E.D. Pa. 2021); *see Huggins*, 2020 WL 13645747, at *7; *see also Krausz*, 2023 WL 1993886, at *14 (granting the defendant's motion to dismiss because the credit report indicated a zero balance and did not reflect any past due payments).  Without such indication, and without

facts to demonstrate that the alleged error was obvious, Plaintiff's claim that Defendant willfully

violated the FCRA lacks the requisite support.  As such, Defendant's motion on this ground is also

granted.[7]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submission and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 16) is **GRANTED**; and the Court

further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close

this case; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules

**IT IS SO ORDERED.**

Dated:  January 24, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[7] Defendant also seeks to dismiss Plaintiff's complaint for failure to provide Defendant with sufficient notice as required by the mortgage agreement.  *See* Dkt. No. 16-1 at 3-4.  Defendant attaches the mortgage agreement to its motion to dismiss and argues that Plaintiff did not satisfy the condition precedent regarding notice, as outlined therein.  *See id.*; *see also* Dkt. No. 16-2. Plaintiff did not incorporate her mortgage by reference, nor are its terms or effects relied on in Plaintiff's complaint.  *See* Dkt. No. 1; *see also Chambers*, 282 F.3d at 152-53.  Thus, the Court will not consider the mortgage.  As the Court has concluded that dismissal is proper on other grounds, the Court will not consider this alternative ground for dismissal.  *See In re Beech-Nut Nutrition Co. Baby Food Litig.*, 651 F. Supp. 3d 629, 634 (N.D.N.Y. 2023) ("The Court agrees that dismissal on this ground is proper and need not consider defendant's other arguments").